HUGH REILLY, as Executor, etc., Respondent, v. THE CITY OF
ALBANY, Appellant.

A contract between T., plaintiff's assignor, and the city of A. for a street
improvement made in 1881, provided that the work should be done
under "such directions, plans and methods as shall be given from time
to time by the street commissioner, city surveyor and engineer of said
city, or either of them," and that the determination of the said commis-
sioner and surveyor as to the amount and extent of such work shall
"be conclusive between the parties," the work to be approved by the
commissioner before payment of any moneys under the contract shall
be due, and payment not to be due "until the same shall have been fully
completed  *  *  *  and until the lapse of thirty days after due appor-
tionment and assessment of the expense of the same shall have been duly
approved and confirmed by the common council of said city  *  *  *
and until the same shall have been collected by the chamberlain." In
August, 1882, the street commissioner duly filed certificates that the
work had been fully completed in all respects pursuant to the terms of
the contract. The Board of Contract and Apportionment caused to be

prepared an apportionment and assessment which it approved and adopted, and in accordance with the provisions of the city charter published notice of the completion of the apportionment and that it would be open for inspection and review. On November 27, 1882, the common council confirmed and approved the apportionment. The Supreme Court on *certiorari* set aside the confirmation, both by the board and common council. No effectual proceedings were thereafter taken by either of said bodies until 1884, when the said board, after a hearing determined, that the work was not done in accordance with the contract, rescinded the street commissioner's certificate of performance, and refused to make any further apportionment. In an action thereafter brought upon the contract, evidence was given showing, and the jury found, that the work was duly performed. *Held*, that upon performance of the contract and filing the street commissioner's certificate to that effect, the city's obligation was to prosecute, in good faith and with due diligence, the means afforded by its charter to obtain the sums necessary, and then to redeem its obligations; that assuming the decision of the Supreme Court effected the annulment of the action of the board and the common council, as under the city charter as amended in 1883 (§ 29, tit. 9, chap. 298, Laws of 1883), the necessity of obtaining a confirmation of the action of the board by the common council was done away with, and the acts of the board were made final and conclusive, the whole power of making a new assessment, after such annulment, devolved upon that body, and it was its duty to proceed therewith; its refusal to make any further assessment was the act of the lawful agents of the city, and constituted a refusal on its part to perform the obligations of the contract; and that plaintiff was entitled to recover the compensation fixed by the contract.

*It seems* that the contractor was not bound by the contract or the city charter to submit any question affecting his legal rights to the board of apportionment or the common council; and that their action or non-action was not in any way conclusive against his claim; but, as provided in the contract, the determination of the street commissioner as to the amount and extent of the work performed was, in the absence of fraud or collusion, conclusive; that no power is conferred upon the board to disregard the certificate of that official and reinvestigate the character of the work or decide upon the question of the non-performance of the contract, and its attempt so to do was wholly unauthorized so far as the contractor was concerned, and in no way affected his legal rights; the power of review and correction is confined in terms to the apportionment based on such certificate.

(Argued December 6, 1888; decided January 15, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order

made February 8, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*D. Cady Herrick* for appellant. Under the charter, as it existed when the contract was let, such contracts were to be paid from assessments collected. (Laws of 1872, chap. 302, § 3.) Where a way of payment is prescribed by statute or by the contract, that way must be strictly pursued. (*Swift* v. *Mayor, etc.*, 83 N. Y. 528–535; *Dannat* v. *Mayor, etc.*, 66 id. 591; *Howell* v. *Buffalo*, 15 id. 512–519; *Baldwin* v. *Oswego*, 1 Abb. Ct. App. Dec. 62–68; *Burch* v. *Brooklyn*, 31 Barb. 142–149; *Luke* v. *Williamsburg*, 4 Denio, 520; *Hines* v. *Utica*, 18 N. Y. 442; *Bohn* v. *Utica*, 19 id. 326; *Hirst* v. *Utica*, 23 Barb. 390–398; *Baldwin* v. *Oswego*, 2 Keyes, 132; *Buck* v. *Lockport*, 6 Lans. 254; *Richardson* v. *City of Brooklyn*, 39 Barb. 569; *Heiser* v. *Mayor, etc.*, 104 N. Y. 67.) The contractor (plaintiff) can only recover of the city by action when it willfully refuses to set the machinery to collect assessment in motion. (*Ganson* v. *Buffalo*, 2 Abb. Ct. App. Dec. 244; *McCullough* v. *Mayor, etc.*, 23 Wend. 458; *Buck* v. *Lockport*, 6 Lans. 251–254; *Hunt* v. *Utica*, 23 Barb. 390–398; *S. C.*, 18 N. Y. 442; *Swift* v. *Mayor, etc.*, 83 id. 528–535.) So far as the common council decided that it was the duty of the board of contract and apportionment to grant a hearing and investigate the truth of the claims of the property-holders, it was binding and conclusive upon the contrartor, he being a party to it. If it was the duty of the board of contract and apportionment to give a hearing, it was also its duty to decide, and its decision was to be determined by what it found to be the facts. No assessment can be made without a hearing. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Chapman* v. *Phœnix Bk.*, 85 id. 437.) The board having jurisdiction to hear, its decision was binding and only to be avoided by *certiorari* or writ of error. (*Swift* v. *Poughkeepsie*, 37 N. Y. 511.) The hearing before the board, its power to determ-

ine, were all part of the machinery through which the con-
tractor was to get his pay; the city was only bound to set the
machinery in motion, it is not responsible for results. (*Rich-
ardson* v. *Brooklyn*, 34 Barb. 569.)   The city is not liable for
the action of the board of contract and apportionment in
refusing to make an assessment. (*N. Y. & B. S. M. Co.* v.
*Brooklyn*, 71 N. Y. 580–584; Laws of 1883, § 29, title 9,
chap. 298; *Heiser* v. *Mayor, etc.*, 29 Hun, 448; 104 N. Y.
68; *Tone* v. *Mayor, etc.*, 70 id. 157–165; *Ham* v. *Mayor, etc.*,
Id. 459; *Maxmillian* v. *Mayor, etc.*, 62 id. 160; *Dannat* v.
*Mayor, etc.*, 66 id. 585.)   If the board of contract had juris-
diction to make the investigation it did as to the completion
of the contract, and made an erroneous decision, the plaintiff
could review its action by *certiorari.* (*Tone* v. *Mayor, etc.*,
70 N. Y. 164.)   If it had no jurisdiction to make such investi-
gation and decision, but was merely to assess, then the plaintiff
could compel it to do its duty by *mandamus.* (*Tone* v. *Mayor,
etc.*, 70 N. Y. 164.)   *Mandamus* is the proper remedy. (*Gan-
son* v. *Buffalo*, 1 Keyes, 454; *McCullough* v. *Mayor, etc.*, 23
Wend. 458; *Dannat* v. *Mayor. etc.*, 66 N. Y. 585–591.)

*Andrew Hamilton* for respondent.   Power to order local
improvements, though the expense is to be assessed upon
property benefited, gives the corporation the implied power
to make general contracts therefor. (Dillon on Municipal
Corporations [3d ed.] § 810.)   Upon a contract duly made,
the city became liable the same as a natural person. (*People*
v. *Stevens*, 71 N. Y. 527; Dillon on Municipal Corporations,
§ 935.)   The contractor fulfilled his contract by a substantial
performance. (*Glacius* v. *Black*, 50 N. Y. 145; *Sinclair* v.
*Tallmadge*, 35 Barb. 602; *Phillips* v. *Gallant*, 62 N. Y. 264;
*Woodward* v. *Fuller*, 80 id. 312; *Nolan* v. *Whitney*, 88 id.
648; *Heckman* v. *Pinckney*, 81 id. 211; *Johnson* v. *DePeyster*,
50 id. 666.)   The work being completed the contract and duty
of defendant was to assess, collect and pay over. (*Wyckoff* v.
*Myers*, 44 N. Y. 143; *Whiteman* v. *Mayor, etc.*, 21 Hun, 117;

*Butler* v. *Tucker*, 24 Wend. 447; *Weeks* v. *Little*, 15 J. & S. 1; *Adams* v. *Mayor, etc.*, 4 Duer, 297; *Chapman* v. *Lowell*, 4 Cush. 378; *Omaha* v. *Hammond*, 94 U. S. 98; *Munic ipality* v. *Guillotte*, 14 La. Ann. 297; *Monitor Co.* v. *Rem ington*, 41 Hun, 208; *McParlin* v. *Boynton*, 8 id. 449; 71 N. Y. 604; *McMahon* v. *N. Y. & E. R. R. Co.*, 20 id. 463; *D. & H. C. Co.* v. *Pa. Coal Co.*, 60 id. 250; *D. & H. C. Co.* v. *Dubois*, 15 Wend. 87; *Byron* v. *Low*, 109 N. Y. 291; *Hoffman* v. *De Graff*, Id. 638; Abbott's Trial Ev. 372.) In the absence of fraud and collusion the acts of public officers, within the limits of authority conferred upon them, cannot be repudiated. (*People* v. *Stevens*, 71 N. Y. 527, 550.) A fact once admitted by a corporation through its officer, duly and properly acting within the scope of authority, is evidence against it, and the doctrine of estoppel applies thereto. (*O'Leary* v. *Board of Education*, 93 N. Y. 1; *Curnen* v. *Mayor, etc.*, 79 id. 514.) When a contract has been fully performed within reasonable requirement, and it is not made to appear that there was any mutual error arising from mistake or fraud, the court will not interfere. (*Lathers* v. *Keogh*, 109 N. Y. 583; *Thomas* v. *Fleury*, 26 id. 26; *Smith* v. *Wright*, 4 Hun, 652; *Smith* v. *Brady*, 17 N. Y. 172; *Bowery Bank* v. *Mayor, etc.*, 63 id. 336.) If by the omission of the city to notify the contractor that the work was not satisfactory, he has been misled into a failure of technical performance, the city should not now be allowed to raise the point. (*Mansfield* v. *N. Y. C. R. R. Co.*, 102 N. Y. 205.) To impeach the city's certificate, it was necessary for the defendant to charge in its pleading the facts constituting fraud, and to clearly prove it on trial. (*Baird* v. *New York*, 96 N. Y. 567; *McVerry* v. *Kidwell*, 63 Cal. 246; *Ogden* v. *Raymond*, 6 Bosw. 16; Welty on Assessments, § 291; Kerr on Fraud and Mistake, 365; *Cohn* v. *Goldman*, 76 N. Y. 284; *Butler* v. *Viele*, 44 Barb. 166; *Wells* v. *Jewett*, 11 How. Pr. 242; *McParlin* v. *Boynton*, 8 Hun, 453; 71 N. Y. 604; *Monitor Co.* v. *Remington*, 41 Hun, 223.) The act of the new board in revoking the certificate of the performance of the

work was absolutely void and unauthorized, as the new charter gave it no jurisdiction over the acceptance of past work nor of any work. (*In re Lange*, 85 N. Y. 310; *Moore* v. *Mayor*, etc., 73 id. 249.) If the acceptance of the defendant's street commissioner alone did not conclude the city, the laying of the assessment by the board of contract, with full knowledge and notice of the defects alleged, its unanimous confirmation by the common council, with same full knowledge, and its approval by the mayor, likewise fully informed, was an acceptance and ratification, full and complete, by the city, and established its liability therefor. (Dillon on Mun. Corp. §§ 385, 463, 478; *Moore* v. *Albany*, 98 N. Y. 406; *Peterson* v. *Mayor*, etc., 17 id. 449; *Edwards* v. *Watertown*, 61 How. Pr. 463; *Meech* v. *Buffalo*, 29 N. Y. 198; *Turnpike* v. *Buffalo*, 58 id. 639; *Williams* v. *Dunkirk*, 3 Lans. 51; *Albany Bank* v. *Albany*, 92 N. Y. 363; *Hoyt* v. *Thompson*, 19 id. 218.) If the common council could not validate the assessment, still it could ratify the acceptance of performance by the street commissioner and board, and make that a basis for a new and valid assessment. (Dillon on Mun. Corp. §§ 463–465; *Messenger* v. *Buffalo*, 21 N. Y. 96; *Eversen* v. *Syracuse*, 100 id. 577; *Moore* v. *Mayor*, etc., 73 id. 248.) The acceptance of a benefit under an assessment creates an estoppel from denying its validity. (Welty on Assessments, § 318; *Moore* v. *Mayor*, etc., 73 N. Y. 248.) The provision of the new charter requiring the board of contract to forthwith reassess any assessment theretofore levied and set aside, having been enacted after all the defects complained of were brought to the knowledge of all parties, was a legislative ratification of the acceptance of the contract as performed by us, and as accepted by the common council, which bound the city without further inquiry to lay a valid assessment, and devolved the duty upon it to carry out these directions. (*Brewster* v. *Syracuse*, 19 N. Y. 116; *People ex rel.* v. *Sup'rs of Otsego Co.*, 51 id. 401; *Lennon* v. *Mayor*, etc., 55 id. 361; Dillon on Mun. Corp. §§ 75, 79, 139, 419, 656, 813, 814; *In re Van Antwerp*, 56 N. Y. 261; *Brown* v. *Mayor*, etc., 63 id. 239; *Howell* v. *Buffalo*, 37 id. 267; *People ex rel.*

*Kilmer* v. *McDonald*, 69 id. 362; *People ex rel. Butts* v. *Rochester*, 5 Lans. 142; *Moore* v. *Mayor, etc.*, 73 N. Y. 248; *Town of Guilford* v. *Sup'rs, Chenango Co.*, 13 id. 143; *U. S.* v. *B. & O. R. R. Co.*, 17 Wall. 322; *New Orleans* v. *Clark*, 95 U. S. 654; *In re Sackett Street*, 74 N. Y. 95; *In re Comm. of Brooklyn*, N. Y. Ct. App. [1878] not reported.) If the contractor's performance was an absolute fact, or if the defendant was estopped from denying it, or if it was bound under the legislative direction to assess, the city became liable by failing to lay and collect an assessment to pay the contract-price. (*Cumming* v. *Mayor, etc.*, 11 Paige, 596; *Beard* v. *Brooklyn*, 31 Barb. 143; *Baldwin* v. *Oswego*, 2 Keyes, 132; *McCullough* v. *Brooklyn*, 23 Wend. 460; *Hunt* v. *Utica*, 18 N. Y. 442; *Baker* v. *Utica*, 19 id. 326; *Green* v. *New York*, 5 Abb. Pr. 503; *Buck* v. *Lockport*, 43 How. Pr. 361; *Quin* v. *Buffalo*, 26 Hun, 234; *Smith* v. *Buffalo*, 44 id. 156; *McCormack* v. *Brooklyn*, 108 N. Y. 49; *Ganson* v. *Buffalo*, 1 Keyes, 457; *Murphy* v. *Louisville*, 9 Bush, 189; *Kearney* v. *Covington*, 1 Metc. [Ky.] 345; *Morgan* v. *Dubuque*, 28 Iowa, 375; *Atchison* v. *Byrnes*, 22 Kan. 65; *Caycraft* v. *Savage*, 10 Bush, 696; *Clayburgh* v. *Chicago*, 25 Ill. 535; Dillon on Mun. Corp. § 482; *In re Kendall*, 85 N. Y. 302; *Brewster* v. *Syracuse*, 19 id. 116; *Moore* v. *Mayor, etc.*, 73 id. 238; *Bowery Bank* v. *Mayor, etc.*, 63 id. 336; *Smith* v. *Buffalo*, 44 Hun, 156; *Duplex Boiler Co.* v. *Gardiner*, 101 N. Y. 387.) The board of contract acted as a corporate, distinct from an independent, public officer, and the act was that of the municipality, under the city charter. (Dillon on Mun. Corp. § 979; *Conrad* v. *Ithaca*, 16 N. Y. 158; *Smith* v. *Buffalo*, 44 Hun, 156; *Sage* v. *Brooklyn*, 89 N. Y. 189; *Genet* v. *Brooklyn*, 94 id. 645; *McCormack* v. *Brooklyn*, 108 id. 49; *People, etc.*, v. *Dwyer*, 90 id. 402; *Turner* v. *Newburgh*, 109 id. 305; *Martin* v. *Mayor, etc.*, 1 Hill, 545; *Walsh* v. *Mayor, etc.*, 41 Hun, 299.) The care, etc., of streets is a duty with which the city is charged for its own corporate benefit, to be performed as its own corporate act. (Old Charter, tit. 3, § 12; tit. 6, §§ 12, 13; New Charter, tit. 3, §§ 14, 25; *Maxmillian* v. *Mayor, etc.*,

62 N. Y. 170; *Conrad* v. *Ithaca,* 16 id. 158; *Groves* v. *Rochester,* 39 Hun, 9; *Ehrgott* v. *N. Y.,* 96 N. Y. 264; *McAvoy* v. *Mayor, etc.,* 54 How. Pr. 245; *Lee* v. *Sandy Hill,* 40 N. Y. 442; *Sage* v. *Brooklyn,* 89 id. 189.) A municipal corporation charged with a duty does not relieve itself by trusting to its subordinates. The opinion of such subordinates that the occasion for the performance of the duty does not exist is not a defense to an action for non-performance. (*Goodfellow* v. *Mayor, etc.,* 100 N. Y. 15; *Adsit* v. *Brady,* 4 Hill, 630; *Hover* v. *Barkhoof,* 44 N. Y. 113; *People* v. *Brooks,* 1 Denio, 457; *Clark* v. *Miller,* 54 N. Y. 528.) The provisions of the charter and the act of 1848, that any unpaid "balance shall be included in the city tax budget, be raised by tax and paid to the parties entitled thereto," was clearly mandatory, and imposed upon the city the duty ultimately of paying the contractor. (*Sage* v. *Brooklyn,* 89 N. Y. 189.) The plaintiff sought the proper remedy by action upon the contract. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *Booth* v. *C. R. M. Co.,* 74 id. 15; *Clark* v. *Miller,* 54 id. 528; *Conrad* v. *Ithaca,* 16 id. 158; Dillon on Mun. Corp. § 482.) The neglect of the defendant to see that a proper assessment was laid constituted a breach of contract, and the legislature cannot deprive a party of a trial by jury in claims for damages against a municipal corporation for a breach of contract. (*Baldwin* v. *N. Y.,* 37 Barb. 440; 42 id. 549; 45 id. 359; 2 Keyes, 387; *Scudder* v. *Trenton, etc., Co.,* 23 Am. Dec. 756; N. Y. Const, art. 1, § 2.) If any defects existed in the work, the defendant should have counter-claimed therefor. (*Loeffler* v. *Froelich,* 35 Hun, 368; *Heckman* v. *Pinckney,* 81 N. Y. 214; *Baird* v. *Mayor, etc.,* 96 id. 574.) Plaintiff was not limited to the remedy of review by *certiorari* of the act of the new board of contract, declaring the work incomplete and rescinding its acceptance, nor obliged to proceed by *mandamus.* (*Glacius* v. *Black,* 50 N. Y. 145; *Smith* v. *Brady,* 17 id. 189; *Thomas* v. *Fleury,* 26 id. 26; *Johnson* v. *De Peyster,* 50 id. 666; *Phillips* v. *Gallant,* 62 id. 256; *Bowery Bank* v.

*Mayor, etc.,* 63 id. 336; *Nolan* v. *Whitney,* 88 id. 648; *Swift* v. *Poughkeepsie,* 37 id. 511; *Bk. of Chemung* v. *Elmira,* 53 id. 49; *Clark* v. *Miller,* 54 id. 528; *People* v. *C. C. of Kingston,* 8 W. Dig. 82; *People* v. *Green,* 1 Hun, 1; *People* v. *Thompson,* 25 Barb. 73; *People* v. *Bd. of Appt.,* 3 Hun 11; 64 N. Y. 627; *People* v. *Thompson,* 99 id. 641; *People* v. *Campbell,* 72 id. 496; *People* v. *Green,* 66 Barb. 630; *Utica Water Co.* v. *Utica,* 31 Hun, 426.) If while the work of a local improvement is being done those liable for the assessment stand by, seeing the work done and make no objection to the character of the work, they cannot after completion maintain a defense thereto. (Welty on Assessments, § 210.)

RUGER, Ch. J. The plaintiff, as assignee of the contractor, brought this action upon contract, to recover the stipulated price for grading, paving and flagging Knox street, in the city of Albany. The evidence fully sustained the verdict of the jury, that the contractor had substantially performed his contract in accordance with its terms, and such finding entitled the plaintiff to recover, unless the provisions as to the time and mode of payment, specified in the contract, presented a defense to the action. It is contended by the appellant that the conditions upon which the defendant agreed to become responsible were not complied with, and that, therefore, no liability had attached to it at the time the action was commenced.

The contract provided, among other things, that the work should be done and materials furnished, "under such directions, plans and methods as shall be given from time to time by the street commissioner, city surveyor and engineer of said city, or either of them," and that "the amount and extent of such work to be ascertained by the said city surveyor and street commissioner, and their determination in the matter *to be conclusive between the parties,* and the work to be in all things approved of by the said street commissioner before the payment of any moneys under this contract shall be demanded, or shall be due. \*   \*   \* And the said party

of the second part does further covenant and agree with the said party of the first part, that payment for the above-mentioned work is not to be required or to be due until the same shall have been fully completed   *   *   *   and until the lapse of thirty days after due apportionment and assessment of the expense of the same shall have been duly approved and confirmed by the common council of said city, according to the statute in such case made and provided; and until the same shall have been collected by the chamberlain from said assessments,   *   *   *   and when the same shall be due and payable as above provided, the said city of Albany, the party of the first part, doth agree and bind itself and its successors."

The contract was dated June 27, 1881. On August 2, 1882, the street commissioner duly filed certificates that such work had been fully completed and performed in all respects, pursuant to the terms of the contract, and the board of contract and apportionment thereupon caused to be prepared an apportionment and assessment of the expense of such work, which it duly ratified, approved and adopted. In accordance with the provisions of the charter the board gave notice, by public advertisement to all persons interested in the improvement, of the completion of the apportionment, and that it would be open for inspection and applications for review and correction, for fifteen days. Certain interested parties filed notices of protest against the confirmation of such apportionment; some of them upon the ground that it was unequal and unjust, and others that the work had not been performed in accordance with the specifications of the contract. On November 27, 1882, the common council confirmed and approved the apportionment. On proceedings subsequently instituted by some of the parties interested, the action of the board of apportionment, and of the common council in approving its action, was removed into the Supreme Court by *certiorari*, and the contractor having been made a party thereto, that court pronounced judgment in November, 1883, setting aside the confirmation and approval of the apportionment by both the board of apportionment and the common

council, upon the sole ground that the board of apportionment had not granted the hearing required by law, to the parties protesting against the confirmation, before making the apportionment. After such judgment no effectual proceedings were taken either by the common council or the board of apportionment, for a hearing of the protesting parties upon the justice and equality of the apportionment, or towards the making of a new assessment or the collection of the expense of the work from the persons liable to pay for it, until October, 1884, when the board of apportionment instituted proceedings to investigate the character of the work performed, and, after taking evidence upon these questions from the lot owners interested, and also from the contractor, determined that the work performed and materials furnished were not in accordance with the contract and specifications, and rescinded the certificate of performance previously given by their street commissioner, and refused to make any further apportionment and assessment.

The present action was in February thereafter brought to recover the contract-price for such work. Upon the trial the court practically held that the refusal of the board of apportionment to make any further apportionment or assessment was the act of the lawful agents of the city and constituted a refusal by the city to take proceedings to raise funds to perform the obligations of its contract. It therefore submitted to the jury the question whether the plaintiff's assignor had duly performed his contract, and in the event of a finding that he had, directed them to render a verdict in his favor We think there was no error in the rulings of the trial court. In view of the theory upon which the case was disposed of by it, we may properly eliminate any consideration of the effect of the determination of the *certiorari* proceedings by the Supreme Court, except to assume, for the purposes of this decision, that it affected the annulment of the action of the board of apportionment and of the common council in making and confirming the apportionment and assessment. No other question was adjudicated by the court except that the city

officials had committed an irregularity in the proceedings to confirm the apportionment and assessment, and that left them in a position and under a duty to proceed as though no previous apportionment and assessment had been made.

The general scheme of the charter, in relation to the subject of improvements in the streets and sidewalks of the city, contemplated their initiation by an ordinance of the common council authorizing them. The subsequent control of the work then passes into the hands of the board of contract and apportionment, whose authority, as the name implies, extended to the power of letting the work, making the contract therefor, and, after its performance was certified by the proper officers, to apportion its expense among the parties benefited, and to assess them for the sums for which they should be found liable.

According to the provisions of the charter, as amended by section 29, title 9 of chapter 298 of the act of 1883, the necessity of obtaining a confirmation of the action of the board of contract and apportionment in making apportionments and assessments, by the common council, had been dispensed with and the acts of the board of apportionment in making them were thereafter made final and conclusive upon the lot owners. It, therefore, appears that after the annulment of the former apportionment by the Supreme Court, the whole power and duty of making a new apportionment and assessment devolved without let or hindrance upon that body. The officers composing this board were city officials, elected and appointed by the city for city purposes, and were paid from its treasury, and represented the city in its dealings with third persons in relation to the subject of improvements in streets and sidewalks. They had no power to contract except in the name of the city, and incurred no personal or official liability by so doing. The duty of making such improvements was by its charter imposed upon the city, and the board, in its capacity as the agent of the city, made the contract in question with the plaintiff's assignor.

It is not disputed but that the contract was lawful in all respects and conformed to the provisions of the law authoriz-

·ing such contracts on the part of the city, not only as to the officers by whom it was made and executed on its behalf, but as to all of its material provisions.    The rights and liabilities of the parties must, therefore, be determined by the obligations of the contract. · An examination of that instrument, so far as the questions involved in this case are concerned, shows ·that the obligation resting upon the contractor was concisely .stated, to perform the work and furnish the materials required under his contract according to its plans and specifications. Having done this, he became entitled to demand payment for his labor when the funds for that purpose should be assessed, levied and collected by the regular agencies of the city having authority to raise means to discharge its liabilities.    In case of a performance of the contract and the filing of the commissioner's certificate to that effect, the city's obligation was to prosecute, in good faith, the means afforded to it by its charter to obtain and pay over the sums necessary to redeem .its obligation.

When the contractor had performed his work according to his contract he had no duty remaining to discharge, and then had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims.    It could not have been supposed ·that he was not only to earn his compensation, but also to set in motion and keep in operation the several agencies of the city government, over whom he had no control, to place in the hands of the city the funds necessary to enable it to pay ·its obligations.    That was a power lodged in the hands of the city, and the clear intent of the contract was that it should exercise· it diligently for the purpose of raising the funds necessary to pay for the improvement.    For an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty.    (*Cumming* v. *Mayor, etc., of Brooklyn,* 11 Paige, 596; *Sage* v. *City of Brooklyn,* 89 N. Y. 189; *McCormack* v. *City of Brooklyn,* 108 id. 49.)

In the case of Cumming, it was said by the chancellor, in

reference to a similar contract, that its "fair construction is that the complainants shall be paid for their labor when the assessment shall be made and collected, and that the corporation will cause such assessments to be made and collected without unreasonable delay, after the work is done. And as the defendants had violated their contract by not having a proper assessment made without unreasonable delay, I think the complainants were entitled to a general decree against the corporation for the payment of the amount due.  *  *  * Although the common council may not have a control over the assessors directly, they were bound by their contract to have the assessment made; and if the assessors refused to do their duty, the corporation should have applied to the Supreme Court for a *mandamus* to compel them to make a proper assessment instead of confirming an invalid one."

After the alleged performance by the creditor, the duty always rested upon the city to make an active effort to discharge its obligations. It, of course, had at all times the right to affirm, at its own risk, that its creditor had not earned his compensation, and to refuse to pay him; but the effect of such conduct would be to put the creditor to an election to either abandon his claim or establish it in an action at law. The latter he has attempted to do.

It was competent, of course, for the contractor to assent to such terms and conditions in his contract as he might deem wise and prudent, and, so far as the defendant can show any obligation on his part, it is the duty of the courts to enforce it; but it is unreasonable and unjust, as against him, to imply any agreement or undertaking not clearly expressed in the contract or within the intention of the parties at the time of making it.

We can see no provision in this contract from which it can be implied that he consented to submit any question affecting his legal rights, to the determination of the board of apportionment or the common council, or by which their action or non-action could be made conclusive as against his claim to compensation. The powers which those bodies possessed and

could legally exercise were clearly defined in the charter, and he contracted with reference to those powers, and upon the assumption that they would perform the duties which the law enjoined upon them. The contract provided, in terms, that the amount and extent of the work performed should be submitted to the determination of the street commissioner, which should be conclusive. Upon those questions and in the absence of fraud, collusion or mistake, his certificate as to performance was binding upon both parties to the contract.

Upon the filing of such certificate the charter provided that it should be the duty of the board of apportionment to apportion the expense of such work among the several persons benefited thereby and assess the same to such persons. That board was also to give public notice of such apportionment and receive the complaints of parties interested who considered themselves aggrieved thereby; and in case it found such complaints well founded it was also authorized to "review and correct" said apportionment and reapportion the same (§ 3, chap. 302, Laws of 1872). We fail, however, to find in this act, or any other which has been brought to our notice, any power conferred upon the board of apportionment to disregard the certificate of the street commissioner and to reinvestigate the character of the work itself, or to decide upon the question of the performance or non-performance of the contract by the contractor. The power of review and correction conferred is confined, in terms, to the apportionment based upon the commissioner's certificate. The provision of chapter 302 (§ 29, tit. 9, of the act of 1883), in the respect mentioned, is substantially the same as that of the act of 1872, and gives no greater power to the board of apportionment than it theretofore possessed. That act, however, prescribes the duty of the board of apportionment in case any apportionment or assessment heretofore or hereafter made, shall be set aside by a court of competent jurisdiction, and provides expressly that it shall, in that event, cause a new apportionment and assessment to be made and collected.

. By direct implication this act seems to exclude the power of the board to go back of the certificate of the commissioner, and, indeed, if that power had been expressly conferred by the act, it could not have operated to annul the provisions of a lawful contract previously made.

The case of *In re Lange* (85 N. Y. 310), under a power much broader than that given in this case, seems to be in point upon the question. That case involved the question of the authority of the board for the revision and correction of assessment lists in the city of New York under a provision in the statute, reading as follows : " Said board shall have power to consider on the merits all objections made to any assessment, and to subpœna and examine witnesses in relation thereto, and to confirm said assessments, or to refer the same back to the board of assessors for revisal and correction, in such respects as they may determine." It was held that " there is no power given to the board of revision and correction to inquire into the original authority to make the assessment, or to vacate the assessment for defect of power in the city to impose it."

The plain statutory duty of the board of apportionment was, therefore, to proceed to apportion the expense of the improvement as provided by law. This duty it wholly neglected, and, by the resolution of 1884, not only refused to make any reapportionment or reassessment, but also assumed the power to set aside the certificate of the commissioner. We can find no authority for this assumption. It was not only unauthorized by any provision of the charter, but was contrary to the express provisions of the contract, to constitute itself a tribunal to try the question of the performance of a contract by a contractor or to attempt to determine his rights by any decision it might make. (*In re Lange, supra.*)

The action of the board, therefore, in attempting to go back of the commissioner's certificate and to investigate the subject of the performance of the contract by the contractor, was wholly unauthorized, so far as the contractor was concerned, and did not affect in any respect his legal rights. The city could, of course, institute by its officers such *ex parte* investiga-

tions into the conduct of its contractors in their dealings with it as it chose, and could thereafter regulate its own conduct in performing or refusing to perform its obligations upon the information thus obtained; but such investigations could have no other effect than to enable the city to determine its own course of conduct in the matter. It could not by such means determine any right of its creditors or impose any obligation upon them to prosecute its agents to secure a reversal of their unauthorized determination, or set them in motion to perform a duty they owed to their principal.

The resolution of the board imposed no bar to the plaintiff's cause of action, and put no duty upon him to seek a reversal of its determination by *mandamus* or otherwise. The members of the board of apportionment were, as such, the legally constituted agents of the city, and had sole authority to determine for it the time, manner and propriety of making apportionments and assessments, and when they refused, for any reason, whether sufficient or insufficient, to do so, the city was, so far as third persons dealing with it were concerned, bound by their action. Having the authority to decide upon the propriety of their action, their determination not to make an apportionment was the act of their principal, and must be taken as conclusive evidence of its intention in respect to the contract in question. That action was professedly based upon the assertion that the contractor had not performed his contract; a ground which, if true in fact, not only justified their refusal to make an apportionment, but constituted a good reason not only why none should ever be made, but also why the contractor should not be paid for his work. The only recourse the contractor then had was to bring an action to try that question, and that issue was fairly made and tried and the city was defeated.

Upon the trial the contractor claimed no benefit from the conclusiveness of the commissioner's certificate, but let the bars down, and the city had every opportunity to prove a defense to the claim upon the merits, if any existed, and it failed.

We see no reason to grant a new trial, and the judgment should, therefore, be affirmed.

All concur, except PECKHAM, J., not sitting.

Judgment affirmed.