·SYLVESTER LACEY, *et al.*, Appellants, v. THE CITY OF MARSHALLTOWN, *et al.*

99   367
115   572
99   367
e127  642

99   367
f141  239

**Street Railways:** PAVING ORDINANCE: *Construction statute.* A city is not required to compel a street railway to· pave any part of the street, by Acts Twenty-second General Assembly, chapter 16, section 1, providing that cities "shall have the power" to compel street railway companies whenever any street is ordered paved, to pave and maintain in width three and one-half feet each way, commencing in the center at the space between the rails; and where an electric line succeeding a horse car company which was bound by ordinance to pay for a certain part of the paving is released from that obligation, abutting owners must pay for all the paving.

**Municipal Corporation:** REPEAL OF ORDINANCE: *Succeeding corporation.* A city may repeal that portion of an ordinance granting the right to construct and operate a horse car line, which requires that in case the street shall be paved, the company shall pave a specified portion thereof, upon granting to the new corporation which purchased the property of the old, the right to lay a new track and operate its cars by electricity.

*Appeal from Marshall District Court.*—HON. D. R. HIND-MAN, Judge.

TUESDAY, OCTOBER 20, 1896.

THIS is a suit in equity, by which the plaintiffs seek to cancel and set aside a special assessment of a tax to pay for paving a street in the city of Marshalltown. There was a full hearing on the merits, and the petition was dismissed. The plaintiffs appeal.— *Affirmed.*

*J. M. Parker* for appellants.

*O. Caswell, H. E. J. Boardman,* and *Binford & Snelling* for appellees.

ROTHROCK, C. J.—I.    On the twenty-fifth day of July, 1892, the city council of the city of Marshalltown, awarded a contract to Gilman & Shorthill for paving and curbing part of Main street, in said city. The plaintiffs, being some twelve in number, were then, and are now, owners of lots abutting on that part of said street, which was ordered by the city council to be paved, and for which the contract was let to said Gilman & Shorthill.    Before the paving was ordered by the city council, and on the twenty-third day of May, 1892, all of the plaintiffs, excepting three, petitioned the city council to make the proper orders for paving the street in front of their property.    In two or three instances, where the abutting property was owned by women, their husbands signed the petition for the paving.    The contractors entered upon the performance of the contract, by purchasing bricks and other material for paving and curbing, which were delivered and placed in front of the lots abutting on the street.    This material was purchased and delivered in the fall of 1892.    The actual work of preparing the street for the paving, was commenced in May, 1893.    It was completed in September of that year, and on the eleventh day of that month, the city council convened for the purpose of making the assessment upon the abutting lot owners to pay the contractors for laying the pavement.    There was a street railway track in the street, and the plaintiffs and some others, owners of abutting property, appeared before the council, "and objected to paying for the paving within the right of way of the street railway located upon said street."    The council refused to entertain the objections, and proceeded to levy the special assessment, and issue certificates to the contractors in pursuance of the stipulations in the contract.    The assessments were for the whole width of the street,

including that part occupied by the street railway track. These certificates were payable in one year from their date. This action was commenced more than one year after the assessment certificates were issued. There is no evidence in the case tending to show that the contractors did not properly perform their contract, as to the time of performance, and there is no showing that the work was not well done. For aught that appears, the contract was fully performed in every particular.

II.   As has been stated, the plaintiffs objected to an assessment by which they were required to pay for paving that part of the street occupied by the railroad track. One or two of them made that objection after the contractors commenced the work, and before it was completed. The validity of that part of the assessment is the principal question in this appeal. The contract was made and the work done under chapter 14, of the Laws of the Twenty-third General Assembly. It appears that the city council authorized a horse railway to be constructed in said street in the year 1884. It was operated for several years by a corporation known as the Marshalltown Street Railway Company. This company failed, and its property was sold under foreclosure proceedings. Afterwards what was known as the Marshalltown Passenger Railway Company, was incorporated. After that, and in 1892, before this paving contract was made, the city council granted to the Marshalltown Light, Power & Railway Company the right to lay a new track, and operate its cars by electricity. By the ordinance granting the right to construct and operate the horse-car line, it was provided that in case the street should afterwards be paved, the railroad company should pave between its tracks, and for fifteen inches on each side thereof. Another contract was made with what is known as

the Marshalltown Passenger Railway Company. It is not necessary to set out all the negotiations and contracts made by the city council in reference to the maintenance and operation of a street railway on the street in question. It is sufficient to say that the charter to build a line, and operate it by electricity, was made before the paving contract was entered into. It is urged in behalf of appellants that the present railroad company is the successor of the original horse-car company, and that it not only succeeded to all its rights, but that it was bound by its obligation to pave between the rails of its track, and for a foot or fifteen inches on each side. This contention is neither supported by the facts nor the law. The paving contract was entered into under chapter 14, of the Acts of the Twenty-third General Assembly. Section 10, of that act is as follows: "When any such improvement shall have been completed, it shall be the duty of the council to ascertain the entire cost of the improvement, and also what portion of such cost may be, by law, assessable on adjacent property, and the portion of such cost so assessable shall then be assessed as provided by law or by ordinance of such city upon the property fronting or abutting on said improvement. Whenever any street railway may have been constructed, and shall remain upon any street which the council may direct to be paved, at the time when such direction shall be given, and when the owner of such street railway may be bound to pave any portion of said street by any action of the city under section 1, of chapter 16, of the Acts of the Twenty-second General Assembly, or by virtue of the provisions or conditions of any ordinance of the city under which said street railway may have been constructed, or may be maintained, and if the owner shall fail or refuse to comply with the order of the council to do such paving, then the portion of the

cost of paving such street, assessable upon such street railway, shall be ascertained, and shall be assessed against such street railway." Section 1, of chapter 16, of the Acts of the Twenty-second General Assembly, provided, that cities should have the power to "compel street railway companies, whenever any street is ordered paved, to pave and maintain in width three and one-half feet each way, commencing at the center of the space between the rails." It will be observed, that the city was not required to compel the street railway company to pave any part of the street, and, when the electric company was authorized to construct its line, it was expressly provided by ordinance, that it should not be required to pave. And this ordinance was, in effect, a repeal of all prior ordinances on that subject. It requires neither discussion, nor argument, to demonstrate that the claim of plaintiffs, that the tax is void, because the railway company was not assessed for any part of the paving in question, is not well founded. When the old horse-car line failed to meet the requirements of the city and its inhabitants, and the time came for the city to authorize the building of the new line, operated by electricity, there ought to be no question that the city had the power to repeal its prior ordinance, and pass such new ordinances as it lawfully had the right to do.

III. As we have said, the plaintiffs made no other complaint than that we have above considered. After the paving was completed, and this suit was in contemplation, other objections were made to the proceedings of the city council. It is said that the mayor of the city did not sign the resolution of intention to pave; that the notice to the contractors was so indefinite that it was void; that the abutting owners had the right, under an ordinance, to do their own paving; that the city council had no jurisdiction in

the premises, because it did not fix upon and determine, in advance of the letting, what material should be used in paving. These and other questions presented and argued, appear to us to be either based upon errors as to the facts as established by the evidence, or mistaken views of the power and authority of the city council. None of them require special consideration. Such of them as are founded in fact are mere technical irregularities, in no manner affecting the power or jurisdiction of the city council.

IV. The defendants, Gilman & Shorthill, the contractors, to whom the paving certificates were issued, filed a cross-petition against plaintiffs, in which they demanded judgments for the respective assessments against them and their property, with ten per cent. interest from the date of said assessments, and five per cent. penalty for commission, or collection fee, and that the several amounts be declared a special lien on the property of the plaintiffs, respectively, and for special execution for the sale of said property. When the petition of the plaintiffs was dismissed, the court dismissed the cross-bill. The defendants, Gilman & Shorthill, appealed from the order, and they demand that judgments and decrees be entered in this court in accord with the prayer of the cross-bill. It will be observed that by the dismissal of the plaintiffs' petition, the assessments were, in effect, held to be valid. The treasurer of Marshall county was made a party defendant, and the petition demanded that the said treasurer be enjoined from selling, or offering to sell, plaintiffs' property to pay said assessments. There was nothing to prevent the treasurer from proceeding to collect the tax after the trial and dismissal of the cause. In view of the record, we make no order in reference to the dismissal of the cross-bill, for the reason that the rights of the parties thereunder are not

presented in argument in such a way as that decrees should be entered in this court. The decree of the district court is AFFIRMED.