FT. DODGE ELECTRIC LIGHT & POWER COMPANY v. THE CITY OF FT. DODGE, J. H. ABLE, County Treasurer of Webster County, and IOWA NATIONAL BANK, Intervenor, Appellants.

**Paving Tax:** STREET RAILWAYS: *Invalid assessment.* Under Acts Twenty-fifth General Assembly, chapter 7, providing that whenever a street railway remains on a street which the council directs to be paved, and the owner fails or refuses to comply with the order of the council to do its portion thereof, the portion of the cost of paving assessable on the street railway (shall be ascertained and assessed against it, a street railway) is not properly assessable for any portion of the cost of paving where the city by its contract for the improvement, has agreed to charge the abutting property owners; especially when the council has not directed that any part of the cost be assessed to such railroad.

LIABILITY OF CITY TO CONTRACTOR. Where a municipal paving contract stipulated that the contractor should receive the special assessment certificates in full payment, but such assessment was illegally and without authority levied on the property of of a street railway not liable therefor, the city was liable to the contractor for the amount of the void certificates, since had the entire amount been assessed against abutting property, it would have been valid, and it therefore lay within the power of the city to fulfill its agreement by making a valid assessment.

INJUNCTIONS: *Appeal.* Where a city council levies an assessment for street improvements wholly without authority, an aggrieved party may enjoin the enforcement of the assessment without appealing, under Code, section 839, providing that any person affected by the levy of any special assessment may appeal therefrom to the district court, and especially where the assessment was made under statutes prior to the Code; the provision as to appeals being limited to assessment proceedings under the provisions of the Code.

STATUTES. Code, section 834, providing that street railway companies shall be required to pave between the rails of their tracks, etc., is applicable only to street improvements undertaken in pursuance of the authority conferred by the Code itself,—section 51 providing that the repeal of existing statutes shall not affect any act done, or accruing or established rights,—and a street railway company is not liable thereunder for special assessments under a paving contract executed prior to the adoption of the Code of 1897.

FOOT RULE: *Constitutional law.* The statute authorizing an assessment for street improvements in accordance with the front foot rule, and without regard to special benefits, is not unconstitutional.

Municipal Corporations: DEBTS: *Paving contracts.* Under Constitution, article 11, section 3, limiting the power of the city to contract indebtedness to an amount not exceeding 5 per cent. of its taxable property, a paving contract obligating a city to pay the cost of paving certain street intersections, etc., is not wholly void and unenforcible by the contractor because the city was previously indebted to the constitutional limit, but the contractor may take advantage of any portion of the contract which the city had power to make.

*Same.* Constitution, article 11, section 3, limiting the power of the city to contract indebtedness to an amount not exceeding 5 per cent. of its taxable property, does not prevent a city already indebted to the constitutional limit from making a contract for street improvements to be paid for by special assessments on abutting property.

*Same.* Where a municipal contract for street improvements provided that the contractor should receive the special assessment certificates in payment, the city's liability for damages resulting from an erroneous assessment, upon property not liable is not an incurring of indebtedness, so as to fall within the prohibition of Constitution, article 11, section 3, prohibiting municipal corporations from becoming indebted to an amount in excess of

5 per cent. of the value of his taxable property; the constitutional prohibition not applying to a liability arising from a wrongful act.

*Appeal from Webster District Court.*—HON. J. R. WHITAKER, Judge.

WEDNESDAY, FEBRUARY 5, 1902.

ACTION by plaintiff, as owner of a street car line in defendant city, to enjoin the collection of a special assessment for paving a street on which the line in situated. The Iowa National Bank intervened, claiming to be the owner, by assignment from J. W. Campbell, of certificates issued for the assessment against the street car line, and asking to have such certificates enforced against the plaintiff or the defendant city. The trial court enjoined the collection of the assessment as against plaintiff, and held the defendant city not liable to intervener for the amount of the certificates. Both the intervener and the city appeal, but the intervener will be designated as "appellant." *Affirmed* in part and *reversed* in part.

*J. K. Macomber* for intervener.

*M. J. Mitchell* and *Wright & Nugent* for City of Ft. Dodge and County Treasurer.

*Botsford, Healy & Healy* from Ft. Dodge Electric Light & Power Co.

McCLAIN, J.—The paving contract in pursuance of which the certificates were issued which give rise to the controversy in this case was made in August, 1896, J. W. Campbell being the contractor. A part of the paving provided for was completed in the fall of that year, and another part in the fall of the year following; the latter part of the work being accepted by the city November 4, 1897. The

assessment for the first part of the work was made in December, 1896, and for the second part in December, 1897; and in each assessment a portion of the cost was taxed to the plaintiff, and certificates were issued thereore to Campbell, the contractor, which certificates were afterwards assigned to the intervener, the Iowa National Bank.

I.  Plaintiff contends that the city had no authority to assess any portion of the cost of the improvement to it as owner of the street car line in the improved street. It appears that, when the franchise was granted by ordinance to plaintiff's assignor in 1894 to construct a street car line, it was provided that the grantee of the franchise should not in any case be required to pave, macadamize, or make any improvements upon the streets, except as necessary in the construction of its line, and that the track of plaintiff's road was laid in the street after the contract for paving was let, and before the work was actually done. At that time there was no statute applicable to the city of Ft. Dodge which required that a portion of the cost of paving streets be assessed to owners of street car lines thereon. The provision of Chapter 7, Acts 25th General Assembly, then in force, and applicable to said city, was that "whenever any railroad or street railway may have been constructed and shall remain upon any street which the council may direct to be paved at the time when such direction shall be given, and when the owner of such railroad or street railway may be bound to pave any portion of said street by law or ordinance of the city, or by virtue of the provisions or conditions of any ordinance of the city under which said railway or street railway may have been constructed or may be maintained, and if the owner shall fail or refuse to comply with the order of the council to do such paving, then the portion of the cost of paving such streets assessable upon said railroad or street railway shall be ascertained and shall be assessed against such street railway." But conceding that the city was not bound by the

terms of the franchise, and might have directed that a portion of the cost be assessed to the street car company, no such direction had been made  See, as somewhat applicable to this question, *Lacey v. City of Marshalltown,* 99 Iowa, 367.  The city had no authority, therefore, in 1896, when it made the first assessment, to impose a portion of the burden on plaintiff.  Nor do we think it had any such authority in December, 1897; for while the Code of 1897 had then taken effect, by section 834 of which it is provided that street railway companies shall be required to pave between the rails of their tracks, and one foot outside thereof, at their own expense, "unless by ordinance of the city, or by virtue of the provisions or conditions of any ordinance of the city under which said  *  *  *  street railway may have been constructed or maintained, it may be bound to pave *  *  *  other portions of said street, and in that case said  *  *  *  street railway shall make, reconstruct and repair the paving  *  *  *  of that part of the street specified in such ordinance," yet this provision, we think, was intended to be applicable to street improvements undertaken in pursuance of the authority conferred by the Code itself.  The contract for the entire work had been entered into prior to the taking effect of the Code of 1897, and by section 51 of that Code the resulting repeal of existing statutes is not to affect any act done or any right accruing, or which has accrued or been established.  Evidently the rights and liabilities of the parties with reference to work done under this contract were settled by the law under which the contract was made, and they were not to be affected by the repeal of that law made by the Code of 1897.  See *Thoeni v. City of Dubuque,* 115 Iowa, 482.  As the section of the Code above referred to does not apply, therefore, to this case, it is unnecessary to discuss the question of construction argued,—as to whether, under that section, an assessment on a street railway company may be levied, regardless of a prior exemption made by city ordi-

nance of the property of the company from such assessments. We do not wish to be understood as passing upon the question whether the legislature may impose liability for a share of the expense of paving upon a street car company, in contravention of an exemption given in a franchise from the city. No such question is raised.

Appellant contends that the plaintiff should have appealed, under section 839 of the Code of 1897, which provides that "any person affected by the levy of any special assessment provided for in this chapter may appeal therefrom to the district court within ten days of the date of such levy," and that "upon such appeal all questions touching the validity of such assessment, or the amount thereof," shall be heard and determined. If the city council had no authority whatever to assess the property of plaintiff for this improvement, then plaintiff may enjoin the enforcement of the assessment without resorting to the appeal thus provided for. *Remey v. Board*, 80 Iowa, 470; *Brownlee v. Marion County*, 53 Iowa, 487; *Macklot v. City of Davenport,* 17 Iowa, 379; *Powers v. Bowman,* 53 Iowa, 359; *Smith v. Osburn*, 53 Iowa, 474; *Barber v. Farr,* 54 Iowa, 57; *Wangler v. Blackhawk County,* 56 Iowa, 384; *Standard Coal Co. v. Independent Dist. of Angus,* 73 Iowa, 304. Moreover, the provision of the Code of 1897 as to appeals seems to be limited to proceedings to make assessments under the provisions of the Code. As we have seen, this assessment was not made under the Code, but under prior statutes, and at a time when there was no provision for such an appeal. We find, therefore, that plaintiff was not liable under these assessments, and that the lower court correctly so held.

II. In the contract for the paving it was stipulated that the contractor should receive the special assessment certificates in full payment, excepting in so far as the city obligated itself to pay the cost of paving in front of the city square and at street and alley intersections. But intervener contends that the city is liable for the

amount represented by certificates issued against the assessments of the plaintiff, which, as we have seen, are invalid. If the city had no authority to assess any portion of the cost of this improvement to plaintiff, then the entire amount which was assessed to plaintiff might have been included in the assessment to abutting property owners, and certificates representing such assessments would have been valid. Therefore, by the erroneous action of the city in making the assessments, intervener, as holder of the assessment certificates—not only those representing the assessments against the plaintiff, but also those representing assessments against abutting property owners—has been damaged to the amount of the void certificates. This is not a case where the city undertook to do something which it could not do, and which the party contracting with it was bound, as matter of law, to know it could not do. Here the city could have done what it agreed to do (that is, have made a valid assessment on abutting property for the entire cost of the improvement not directly assumed by the city), and it failed to do so. The party contracting with the city had no control over the method of determining the part of the cost which should be assessed to each property owner, nor over the method of issuing certificates. If, by the wrongful action of the city, he is unable to realize on any of the certificates issued to him, by reason of the wrongful action of the city council in carrying out the contract between him and the city, then we think he has a right to recover from the city. It has been frequently decided that where a city issues obligations payable out of a special fund, which it has authority to raise, but fails to take the steps necessary to bring such fund into existence, the holder of the obligations may recover against the city. In *Reilly v. City of Albany*, 112 N. Y. 30, 42, (19 N. E. Rep. 508, 510), the following language is used which seems pertinent in the case we have before us: "When the contractor had performed his work according to his contract, he had no duty remaining to discharge, and

then he had a right to rely upon the implied obligation of the
city to use with due diligence its own agencies in procuring
the means to satisfy his claims. It could not have been sup-
posed that he was not only to earn his compensation, but
also to set in motion and keep  in operation the several
agencies of the city government, over whom he had no con-
trol, to place in the hands of the city the funds necessary to
enable it to pay its obligations.   That was a power lodged
in the hands of the city, and the clear intent of the con-
tract was that it should exercise it diligently for the pur-
pose of raising the funds necessary to pay for the improve-
ment. For an omission to do so it would become liable to
pay such damages as the contractor might suffer by reason of
its neglect of duty."   And see, as supporting the same
proposition, *Barber Asphalt Paving Co. v. City of Denver,*
19 C. C. A. 139 (72 Fed. Rep. 336) ; *Denny v. City of Spo-
kane,* 25 C. C. A. 164 (79 Fed. Rep. 719) ; *Winston v. City
of Spokane,* 12 Wash. 524 (41 Pac. Rep. 888) ; *Barber As-
phalt Paving Co. v. City of Harrisburg,* 12 C. C. A. 100
(64 Fed. Rep. 283, 29 L. R. A. 401) ; *Heller v. City of
Garden City,* 58 Kan. 263, (48 Pac. Rep. 841) ; *Lyon v.
District of Columbia,* 20 D. C. 484; *Hitchcock v. City of
Galveston,* 96 U. S. 341 (24 L. Ed. 659). Even though
the contractor has agreed to look to the particular fund, the
city becomes liable if it fails to provide the fund.   *Com-
mercial Nat. Bank v. City of Portland,* 24 Or. 188 (33
Pac. Rep. 532, 41 Am. St. Rep. 854).   There are also
cases in this state recognizing the same doctrine.   In *Bu-
croft v. City of Council Bluffs,* 63 Iowa, 646, this language
is used:  "When the city admitted the existence of a debt,
and issued certificates of assessment, to the end that the
plaintiff could be paid out of a particular fund created by
the city, it must be assumed that it guaranteed, or by im-
plication contracted, that such fund existed, or that it had
taken, and had the power to take, the steps necessary to
create such fund. . Now, when it turns out that there was no

such fund, and that the power to create it did not exist, it seems to us that the city should not and cannot escape all liability under the contract, and it has been so held." And this case is cited with approval and applied in *Polk Co. Sav. Bank v. State,* 69 Iowa, 24; *Scofield v. City of Council Bluffs,* 68 Iowa, 695. But appellee contends that the Iowa cases are not conclusive, because they relate to improvements which might have been paid for originally out of the general fund of the city, while in this case it is claimed that the city was already indebted up to the constitutional limit, and therefore it had no power to create a liability which must be satisfied out of the general fund, and would on that account be in excess of the constitutional limit. We must therefore consider the question as to the effect of the constitutional provision limiting the power of the city to contract indebtedness. But before passing to that question something should be said as to the argument that the contractor, by accepting the certificates, waived any claim against the city. The question whether the council could lawfully assess a portion of the cost upon plaintiff depended not simply on the laws of the state, but upon the terms of the contract between the city and the plaintiff. It would not be reasonable to hold that the contractor must know, at his peril, whether the certificates based on the assessment against plaintiff were valid. He was justified, we think, in assuming that the city had made a valid assessment and issued enforceable certificates; and, if the certificates issued were not valid, then he was entitled to his recourse against the city. *Chicago v. People,* 56 Ill. 327.

III. It is contended by the city that in view of the constitutional limitation on the power of the city to contract indebtedness to an amount, in the aggregate, exceeding 5 per centum on the value of its taxable property (Constitution, article 11, section 3), the whole contract for this paving was vaid, because it

bound itself thereby to pay for the paving in front of the public square and at street intersections (being already in-debted to the constitutional limit), but we do not think that question is in this case. The validity of the obligation of the city, so far as it attempted directly to create this in-debtedness, has not been raised, nor could it be; for, as we understand the record, this part of the cost of the improve-ment has been paid. And even if it had not been paid, there is no reason why the contractor should not take ad-vantage of any portion of the contract in his favor which the city had the power to make; and it had undoubtedly the power, even though indebted up to the constitutional limit, to contract for street improvements so far as they could be and were to be paid for by special assessments on abutting property. *City of Clinton v. Walliker,* 98 Iowa, 655. It is not for the city to object to the validity of the contract, so far as it was valid, on the ground that it also attempted to assume obligations thereby which could not be enforced. That objection could be made by the contractor, not by the city. We now reach the question whether to en-force against the city a liability for failure to carry out its contract by issuing valid certificates for the portion of the cost of the improvement which could have been properly assessed against abutting property owners, but which was not so assessed, is an infringement of the constitutional limitation on municipal indebtedness. The language of the constitutional provision is significant. It is said that no "municipal corporation shall be allowed to be-come indebted in any manner or for any purpose to an amount" in excess of 5 per centum on the value of its tax-able property. The city did not attempt to become in-debted for this portion of the improvement, nor did the contractor agree to take the obligations of the city therefor. The liability of the city arises from its failure to discharge a duty which it could constitutionally discharge, arising out

of a particular relation between the parties. It has been fully settled that the constitutional limitation does not apply to an indebtedness arising out of a tort committed by the city. *Bartle v. City of Des Moines,* 38 Iowa, 414; *Rice v. Same,* 40 Iowa, 638, 646. And in *Thomas v. City of Burlington,* 69 Iowa, 140, which was an action against the city to recover taxes illegally exacted and paid under protest, this language was used: "In the case cited (*Bartle v. City of Des Moines, supra*) there was an omission to do an act enjoined by law. In the present case the city did an act it had no right to do, and by wrongful action received or seized money, the property of the plaintiff. It did not become the money of the city by such wrongful seizure or enforced payment. The money belongs to the plaintiff now as fully as it did prior to the payment. The plaintiff is seeking to recover his own property, which is held by the city for his use. There cannot be a debt or debtor unless there is a creditor, and while, in a certain sense, the plaintiff may be regarded as the creditor of the city, we do not think he is such in contemplation of the constitution. He is not a voluntary, but an involuntary, creditor. He became such by compulsion. The constitution provides that the city cannot become indebted in any manner. This implies an assent on the part of the creditor, and thus it is that the prohibited indebtedness is incurred; that is, it is created by the voluntary act of both parties. Such an indebtedness cannot be contracted if the city is in debt beyond the constitutional limit. It may be assumed that a person can protect himself by due inquiry from entering into a contract whereby he becomes the creditor of the city, when indebted beyond the constitutional limit, but he cannot fully protect himself in the case at bar. It is true, he can refuse to pay the taxes; and, if his property is distrained, he could, it will be assumed, defeat the tax by an appeal to the courts. But when the tax is levied, or within a brief period thereafter, an apparent lien is created

on his property, and thereby his title is clouded. This cannot be removed except by an action, which takes time. In the meantime he may be unable to sell or mortgage his property for ligitimate purposes. The only efficient and sufficiently speedy remedy in such case may be the payment of the taxes. Strictly speaking, an indebtedness cannot be created except by contract, either express or implied; and we feel constrained to hold that the indebtedness prohibited by the constitution is such as is created by the voluntary action of both the debtor and creditor." This language we think pertinent to the case now before us. It was not by any voluntary act of the contractor that the city became indebted to him, and it was not contemplated by the contract that in this respect the city should become his debtor; but, by its own negligence in failing to perform a duty which it had lawfully assumed, a claim against the city in favor of the holder of these certificates has arisen. It does not matter whether this breach of duty was a tort, in the technical sense of the term, or not. The constitutional limitation does not make any such distinction. Nor do we think that it is conclusive to say that the obligation is one arising by implied contract. No doubt, some obligations arising by implied contract are within the prohibition of the constitutional clause. If the city should direct the improvement to be made without any express contract therefor, and without any arrangement for payment by assessment on abutting property, the obligation to make payment of the reasonable cost to one who should perform the work would be an obligation by implied contract; but it would be an obligation voluntarily assumed, as between the city and the contractor, and would create an indebtedness, within the terms of the constitutional provision. The liability of the city here is one growing out of negligent omission to do that which the city had the right to do, and which, if done, would not have involved any creation of indebtedness, and therefore we think the constitutional limitation

does not apply. The exact question has not been before this court, but cases somewhat analogous have elsewhere arisen where a city has sought in similar cases to avoid a collateral liability growing out of the issuance of invalid improvement certificates on the ground that such liability was in excess charter limitations upon its power, and it has been held that the defense was not available to the city. *McEwan v. City of Spokane,* 16 Wash. 212 (47 Pac. Rep. 433); *Winston v. Same,* 12 Wash. 524 (41 Pac. Rep. 888); *Denny v. Same,* 25 C. C. A. 164 (79 Fed. Rep. 719). We hold, therefore, that, notwithstanding the constitutional limitation of indebtedness, the city of Ft. Dodge is liable to the intervener to the amount of the invalid certificates issued by it against the plaintiff.

The question is argued as to whether there was any competent evidence that the city was indebted to the constitutional limit. The city introduced in evidence a so-called tax list of Webster county for the year 1896, showing the amount of the taxable value of property in the city. This evidence was objected to on the ground that the tax list in question was not as yet completed at the time the contract in question was made, and that "the last city and county tax lists previous to the incurring of such indebtedness," as specified in the constitutional provision above referred to, would be the tax lists of the preceding year, on which the board of supervisors had acted in making a levy. We do not find it necessary to pass upon this question, in view of the conclusions already reached.

IV. The validity of the entire contract for the street improvement is assailed on the ground that the legislation on which it was based was unconstitutional in that it authorized an assessment in accordance with the front root rule, without regard to benefits. This question has recently been discussed and this court is committed to the doctrine that our statutory method of making such assessments is not unconstitutional. *Hackworth*

v. *City of Ottumwa*, 114 Iowa, 467. It is not necessary to review the question here.

The decree of the lower court, dismissing intervener's petition, and denying relief against the city on the certificates issued against plaintiff, is erroneous. On the appeal of the city of Ft. Dodge, the judgment of the lower court is AFFIRMED, but on intervener's appeal it is REVERSED.