[No. 211.   Decided July 9, 1891.]

JOHN WILSON v. THE CITY OF SEATTLE *et al.*

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — ASSESSMENTS
— NOTICE — RIGHT OF ACTION — CERTIORARI.

When there is no remedy by appeal by which the validity of a street assessment may be contested, *certiorari* is the proper method of reviewing the proceedings therefor.

Where proceedings were begun for the improvement of a street in the city of Seattle while the charter of 1886 and the ordinance thereunder were in force providing that the assessment therefor should be according to the value of the property abutting on the improvement, and subsequent thereto, but prior to the levying of the assessment, the old charter was superseded by the charter of 1890 providing that the expense of making street improvements should be levied according to the frontage of property on the improvement, an assessment according to value is unauthorized and void.

Where the ordinance under which a street improvement is authorized provides that notice of the assessment therefor shall be published in a daily newspaper for ten successive days, notice according to the terms of the ordinance is absolutely necessary: and there can be no presumption, in such a case, that due notice was given.

Article 15, § 8 of the charter adopted by the city of Seattle in 1890 providing that "no action shall be brought or maintained to test or question the validity of any assessment unless the plaintiff shall first pay into court the amount of the assessed tax," is not within the powers granted to cities of the first class by the constitutional delegation of authority to them to frame their own charters.

*Appeal from Superior Court, King County.*

*Certiorari* to review the proceedings of the city council of the city of Seattle in the matter of the improvement of

Twelfth street in said city. The petition names as defendants the mayor, clerk, comptroller, assessor, board of delegates and board of aldermen of the city of Seattle. The superior court quashed the writ of review, affirmed the proceedings of the city council, and rendered judgment against plaintiff for costs. Plaintiff appeals.

*Tustin, Gearin & Crews,* for appellant.

*Orange Jacobs,* for appellees.

The opinion of the court was delivered by

STILES, J. — Appellant seeks by *certiorari* to quash an assessment upon certain real estate fronting upon South Twelfth street, in the city of Seattle, for grading and sidewalks. In the court below a demurrer to the petition was overruled, and the writ issued; but upon the return the proceedings of the city council, including the levy, were affirmed.

The first point we are required to pass upon is the objection of the respondents that *certiorari* is not the proper remedy in this case. The improvement for which this assessment was laid was undertaken by the city of Seattle in June, 1890, while the charter of 1886 was in force. Under that charter (§ 10, Acts 1886, p. 243) such assessments were to be collected by an action at law or a suit in equity in the name of the city, or the officer or contractor to whom it might be directed that payment should be made. Had that law continued in force, we should probably have held that the opportunity thus given to the owner of assessed real estate afforded the proper method and time for contesting the assessment to the exclusion of the remedy by *certiorari*. *Garvin v. Daussman,* 114 Ind. 429 (5 Am. St. Rep. 637; 16 N. E. Rep. 826). But under the charter of the city of Seattle, adopted October 1, 1890, the act of 1886 was completely superseded, and a new method of collecting such assess-

ments was provided, viz., by sale by the treasurer. Charter 1890, art. 8, § 8; *Id.*, art. 9, § 24. This renders it necessary to examine the law of the case to see whether the appellant is provided any remedy for the wrong he complains of, by appeal or otherwise; and there seems to be none at all. When there is no remedy by appeal, *certiorari* is the ordinary method of reviewing such cases. Elliott, Roads & S., p. 279, *et seq.*

The issuance of the writ was therefore proper; and the next question is, what was the scope of the inquiry to be made upon the return, the superior court having, under the constitution (article 4, § 6), jurisdiction to issue writs of *certiorari* in the common-law sense? The common-law writ of *certiorari* is the proper remedy upon which to correct the errors of all inferior tribunals where they have exceeded their jurisdiction or proceeded illegally and there is no appeal or other mode of reviewing or correcting their proceedings. Wood, Mandamus, etc., 174; *Camden v. Bloch*, 65 Ala. 236; *State ex rel. Moreland v. Whitford*, 54 Wis. 150 (11 N. W. Rep. 424); *People ex rel. Clapp v. Board of Police*, 72 N. Y. 415. We believe this to be the general rule in this class of cases, though there is some diversity of opinion on the point as to whether the inquiry should extend beyond the question of jurisdiction. Upon the return to the writ, therefore, it was incumbent upon the court to examine the record to determine — (1) whether the city had jurisdiction; (2) whether the proceedings were according to the statutes and ordinances. By her charter of 1886, the city of Seattle had power to order the improvement of streets at the cost of abutting owners, either upon petition of the owners of more than half the property to be affected, or, in the absence of such a petition, by a unanimous vote of all the members of the council present at a regular meeting. The charter left the matter of making regulations for the exercise of this power

to the city; and about June 1, 1886, an ordinance (No. 737) for that purpose went into effect. This ordinance provided for assessment districts extending a certain distance on each side of the street to be improved, and that the expense should be assessed upon property in the district according to its value. It appears that after several petitions of property owners for the improvement of different sections of South Twelfth street had been presented to the council, and after some of them had been "granted," the council on the 25th day of June, 1890, passed ordinance No. 1413, providing for the grading, etc., of South Twelfth street from Yesler avenue to Stacy street, by the unanimous vote of seven councilmen, being all the members present at a regular meeting held on that day. The body of the ordinance provided that it should take effect from its passage, approval and publication, and that the work should be completed within 180 days from the date of the execution of the contract for the improvements. The record is silent as to whether any contract was made, and as to whether the work, or any part of it, has ever been done. It is meager in other particulars also, where, in view of the importance of the proceeding, care and exactness would naturally be expected. But, as but two points are urged on this appeal, we shall confine our remarks to them. Upon the passage of ordinance No. 737 in 1886, it was incumbent upon the municipal authorities to adhere strictly to its provisions in making assessments. Sections 4-7 of ordinance No. 737 were as follows:

"SEC. 4. That, within twenty days after the council shall have made an order for the improvement of any street, highway or alley, the city surveyor shall prepare and file with the clerk a plat of the street or streets, highway or highways, alley or alleys so to be improved, and of the real estate subject to assessment therefor, showing the lines of such lot or other smallest subdivision thereof; and within ten days thereafter the city clerk shall prepare and file in

his office an assessment roll for each separate assessment district, if several streets, highways or alleys are to be improved at the same time, upon which assessment roll each lot or other smallest subdivision of real estate in such district shall be listed in the name of the owner thereof, if known, or as 'unknown owner,' and assessed at the actual cash value thereof: *Provided,* That in all cases the valuation to be placed on each lot in such assessment roll shall, as far as practicable, be the same as that placed upon the same property upon the last preceding annual assessment roll and tax list for the city of Seattle, and such assessment roll shall be open to public inspection at the clerk's office during business hours from the time of filing thereof until the day of the meeting of the council for the equalization thereof, as hereinafter provided.

"SEC. 5.   That within three (3) days from the filing of such assessment roll, the clerk shall advertise a notice in a daily newspaper of the city to the effect that such assessment roll (describing it) has been filed in his office, and that the same is open to inspection, and that any person finding himself aggrieved by such assessment may apply to the common council to have the same corrected at a meeting of the council to be designated in such notice, which meeting shall be the first regular meeting after the last publication of such notice; and such notice shall be published for ten days in each successive issue of said newspaper.

"SEC. 6.   That at the first regular meeting of the common council after the last publication of such notice, the common council shall equalize such assessment, and shall hear all complaints concerning such assessment roll, and determine the same, and may raise or lower the valuation of any lot or parcel of real estate listed in such assessment roll, so as to make the assessment equal and uniform, as near as may be, upon all property in the district; and shall, if any lot or parcel of real estate within such district be found to have been omitted from such assessment roll, list the same, and place a just valuation thereon: *Provided,* That no lot or parcel of real estate omitted by the clerk shall be listed, nor shall the valuation of any lot or parcel of real estate be raised by the council without the owner's consent, until at least twenty-four hours after a written notice of

such proposed change shall have been served upon the
owner or his agent, if such owner or agent can be found
within the city, and if not so found, then a notice of such
proposed change in the assessment roll must be first pub-
lished for at least three days in a daily newspaper of the
city; and the council may adjourn from time to time, if
necessary, until the equalization of such assessment roll
shall be completed.

"SEC. 7. That as soon as practicable after such assess-
ment shall be equalized, and the nature and extent of assess-
ment districts shall have been fixed, and the cost of the
improvement shall have been ascertained, the council may
by an order, fix the rate of assessment for such district, or
for each of such districts, as the case may be, so as to raise
the necessary amount to pay for such improvement in ac-
cordance with the provisions of this ordinance."

On July 31, 1890, the city clerk, according to the return,
commenced the publication in the Seattle *Evening Times* of
a notice of the filing of the South Twelfth street improve-
ment assessment roll, and that on Friday evening, August
15th, the council would sit to hear complaints and equalize
the assessment; but there is no proof that the notice was
published for ten consecutive days, or that it was published
at all, as required by the last clause of § 5. The record
does not show that the council sat August 15th, or that the
matter of this assessment was considered; nor did anything
further transpire in the matter until January 14, 1891,
when ordinance No. 1595 was passed, as follows:

"ORDINANCE NO. 1595.

" AN ORDINANCE to provide for the levy of the rate per cent. for the
improvement of South Twelfth street from Yesler avenue to
Stacy street, in the city of Seattle.

" *Be it ordained by the city of Seattle as follows:*

"SECTION 1. That a tax of 542½ mills per dollar be
levied on the real property, excluding improvements, in the
district provided for by the ordinance No. 1413, to pay the
cost of grading and sidewalking of South Twelfth street
from Yesler avenue to Stacy street, in the city of Seattle.

"SEC. 2. The city comptroller and assessor is hereby

empowered, authorized and directed to extend said rate per cent. on the property within the district fixed by ordinance No. 1413, and to collect the same according to law.

"SEC. 3.   This ordinance shall take effect and be in force from and after its passage, approval and publication."

In the mean time the charter of October 1, 1890, had been adopted, and an entirely new system of street assessments provided, under which the expense of making street improvements was to be levied, not according to the value of the property abutting, but according to its frontage on the improvement.   Charter, art. 8, § 7.   Under the old charter (§ 10) the lien of assessments did not attach until the levy was made.   We are therefore clearly of the opinion that the new charter was, from the date of its adoption (October 1, 1890), the law of the case, and that the assessment in 1891, according to value, was unauthorized and void.

Returning, now, to the question of the notice, it was argued that, even if notice was necessary, the recital by the city clerk in his return that the notice was advertised in the Seattle *Evening Times*—"date of first publication, July 31, 1890"—was sufficient basis for the court to presume that the notice was published for ten days, and that proof of the fact had been made when the council proceeded to make its levy, as public officers are presumed to proceed according to law.   Notice was absolutely necessary; for, although the statute did not require it, it is a general principle of law, too well known for comment, even, that in every proceeding whereby these special assessments are levied it is necessary as a constituent of due process of law; besides which, the ordinance No. 737 did require it in terms.   When the council met on the 15th day of August (if it did meet then), and the matter of this assessment came up, the first question before it was, had the notice been published for ten successive days?   It could know that fact in no other way than by the certificate or affidavit

of the publisher; and until that document lay before it, it had no jurisdiction to proceed. *Gatch v. City of Des Moines*, 63 Iowa, 721 (18 N. W. Rep. 310). Presumptions are not admissible in cases of this kind, where the property of the citizen is taken, and where jurisdiction is acquired only by strict compliance with the law.

But it is urged that the appellant was barred of his right to contest the lien upon his property because he did not pay into court the amount assessed to him, in accordance with § 8, art. 15, of the new charter. That section reads as follows:

"No action shall be brought or maintained in any way to test or question the validity of any assessment, proceeding, certificate or tax deed unless the plaintiff shall first tender and pay into court the amount of the assessed tax, together with all interest, penalties, costs and damages thereon."

It occurs in the article devoted to the duties of the corporation counsel and city attorney, without connection with or relation to any other portion of the article. It is a somewhat curious provision, but is not unprecedented in legislation. *Wilson v. McKenna*, 52 Ill. 48; *Reed v. Tyler*, 56 Ill. 292. We can hardly agree that in the city of Seattle there is to be no way of avoiding the payment of an illegal assessment except by paying it, as we do not believe that the constitutional authority delegated to cities of the first class to enact their own charters contemplates such a sweeping deprivation of ordinary legal rights. The property assessed is abundant security for the assessment, if it is a valid one; and, if it is invalid, the owner should be put in in no such disadvantageous position. According to these views, the levy and all proceedings in the matter of the South Twelfth street assessment, as far back as and including the notice, must be quashed; but, as the improvement was legally ordered, this disposition of the matter will be

without prejudice to the city to make a new assessment and levy, if it can be done, under the charter of 1890.

Judgment reversed, and cause remanded to the court below for proceedings in accordance herewith.

ANDERS, C. J., and DUNBAR and SCOTT JJ., concur

HOYT, J, dissents.