## DENNY v. CITY OF SPOKANE.

(Circuit Court of Appeals, Ninth Circuit. February 8, 1897.)

### No. 302.

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—INVALID ASSESSMENT—RIGHTS OF CONTRACTOR.
    The city of S. entered into a contract with one M. for the making of a public improvement, by which contract it agreed to levy and collect, without any delay, an assessment to pay for such improvement. It then proceeded to levy the assessment, but, pending its collection, the ordinance under which it was made was declared void by the courts, and the city proceeded, under power conferred by the legislature, to make a reassessment, but before it was completed some of the claims for benefits had become outlawed. Held, that the city, not the contractor, must be responsible for its mistake in the construction of the law, and that it was liable to him for the damages caused by its delay in levying a valid assessment. McEwan v. City of Spokane (Wash.) 47 Pac. 433, followed.

2. SAME—EXCESSIVE INDEBTEDNESS.
    Under the provision in section 19 of the charter of the city of Spokane, Wash., that the indebtedness of the city must not, at any one time, exceed $25,000, excluding its indebtedness for waterworks and assessments for improving streets, a debt arising upon warrants issued to a contractor for a street improvement, in anticipation of the collection of the assessment, is not within the prohibition, notwithstanding the city may become liable to the contractor in damages for delay in collecting the assessment.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

This action was brought by appellant against appellee to recover judgment against it on certain street-grade warrants issued in settlement of various contracts entered into by it prior to October, 1889, for the purpose of grading the public streets of the city; the gravamen of the action being the neglect and failure of the officers of appellee to create a fund out of which to pay said claims. The defense is that the officers have done all in their power to create the fund, and that there is a want of authority to pay, on account of the limit of indebtedness of the city having been reached. At the close of the testimony, appellee moved the court for an instruction to the jury to find a verdict in favor of appellee, which motion was granted.

Section 7 of the charter of the city of Spokane Falls, approved January 29, 1886 (St. 1885–86, pp. 300, 302), reads as follows: "The city of Spokane Falls shall have power to construct and repair sidewalks, and to curb, pave, grade, plank, macadamize and gutter any street or streets, highway or highways, alley or alleys therein or any part thereof, and to levy and collect a special tax or assessment on all lots and parcels of land fronting on such street or streets, highway or highways or on any part thereof, sufficient to pay the expenses of such improvement, and for such purpose may establish assessment districts consisting of all lots and parcels of land fronting on a portion or the whole of any such street or streets, alley or alleys, highway or highways, as may be deemed advisable. Provided, however, that all such assessment districts shall in all cases extend back to the middle of the block fronting on such improvement; provided, further, that in all assessments and levies to pay the expenses of such improvements the real estate only shall be assessed, excluding from such assessment all improvements thereon, whether the same are affixed to the land or not, and the improvements on such lands shall not be taken or assessed as any part of the land, or at all; and provided further, that unless the owners of more than one half of the land subject to assessment for such improvement, petition the council to make such improvement, the same shall not be made unless six members of the council are present and vote in favor of making same."

By an act relating to and authorizing the collection of the assessments for local improvements by a new assessment or reassessment of the cost and expenses of making the same in cities and towns and declaring an emergency, approved March 9, 1893 (Laws Wash. 1893, p. 226), it was provided that whenever an assessment for laying out, establishing, grading, macadamizing, etc., any street, avenue, or alley, or for any local improvement, "has been or may be hereafter declared void and its enforcement under the charter or laws governing such city or town refused by the courts of this state, * * * the council of such city or town shall by ordinance order and make a new assessment or reassessment upon the lots, blocks, or parcels of land which have been or will be benefited by such local improvement." Section 12 of this act provides: "Whereas the assessments for local improvements in the cities of this state have in several instances been set aside and declared void for irregularities and no adequate law now exists for re-assessments therefor an emergency is declared to exist." On the 14th day of July, 1888, the city of Spokane Falls (now Spokane) entered into a contract with one V. M. Massey, wherein said Massey, "in consideration of the agreements and payments hereinafter named, and to be made by said city of Spokane Falls, hereby agrees that he will clear, grub, and grade Monroe street, in said city, * * * in accordance with the plans and specifications * * * on file with the city clerk"; that he will do said work and complete the same within a reasonable time. The city of Spokane Falls, upon its part, agrees to pay a certain sum of money specified in the contract, 80 per cent. of the value of the work performed at the end of each month, to be estimated by the city engineer, and the balance upon the completion and acceptance of the work; "and further agrees that it will proceed, as soon as its laws provide, to levy and collect a special tax or assessment upon the property within the assessment district created for said improvement for the payment of the sums herein agreed to be paid, and to collect the same, and to pay the same as herein provided; and said city expressly

covenants that it will prosecute the business of levying and collecting such special tax or assessment without any delay whatever in any part of the proceedings, and in the shortest time possible under its charter and ordinances relating thereto. And it is further agreed that if, at the time any payment becomes due on this contract as aforesaid, the said city shall not have received from said special tax or assessment sufficient money with which to pay the same. it shall issue to V. M. Massey its warrant for the amount of such deficiency, payable to him or his order out of said Monroe street grade fund, not more than one year from the date of this contract, with interest at the rate of 8 per cent. per annum; such warrants to be drawn in such denominations as said Massey may request. And the said city of Spokane Falls further agrees that, in case such warrants are issued and accepted by said Massey as aforesaid, it will redeem and pay them before due, if presented, as fast and whenever it collects the money from such special tax or assessment: provided, however, that warrants issued for payment accruing during progress of the work shall not be paid until the work is completed; and money received during said time shall be applied to cash payments." It is stipulated and agreed: "That in pursuance of the aforesaid contract the said V. M. Massey fully and completely performed the same, and that the city of Spokane Falls (now Spokane) upon its part issued the warrants set forth in the said fifth cause of action in the complaint; that the same were duly presented for payment to the treasurer of said defendant at the time mentioned in the complaint, and payment thereof was refused for want of funds; that said warrants were assigned and transferred to the Portland Savings Bank for a valuable consideration, and are now in possession of the plaintiff as receiver. * * * The balance unpaid on said warrants was, on the 25th day of June, 1895, the sum of $21,461.98, and that the defendant has taken no other or further steps to create the fund out of which said warrants are payable than as are hereinafter mentioned. * * * It is further stipulated and agreed that at the time of entering into the contract * * * and the passage of the ordinances for the grading of the several streets the defendant, the city of Spokane Falls (now Spokane) was indebted in an amount exceeding the sum of $25,000, excluding its indebtedness for waterworks and assessments for improving streets under the provisions of section 7 of chapter 2 of the act of the legislature of the territory of Washington entitled 'An act to amend an act entitled "An act to amend an act to incorporate the city of Spokane Falls, approved November 28, 1883," approved January 29, 1886.'" On July 7, 1886, a valid ordinance (No. 33) was passed by the city council, which, among other things, provided that whenever the city shall cause any part of any street, highway, or alley to be curbed, planked, paved, graded, or guttered, or any sidewalk to be constructed or repaired in any such street, etc., "the whole cost of such improvements shall be levied and become a lien upon the taxable real estate fronting such street or alley as may be improved as may be within the assessment district established." Section 2 of this ordinance provides that: "All assessment for such improvements shall be according to value, so that each lot or other smallest subdivision of real estate subject to assessment shall be held for such portion of the whole cost of the improvements within any assessment district as the value of such lot or smallest subdivision of real estate bears to the aggregate value of assessable property within said assessment district; and in fixing values all improvements upon real estate shall be excluded, and the land shall only be assessed, and the cost of any such improvements shall include all lawful charges and expenses incident to such improvements and of making and collecting the assessment thereof." On September 28, 1887, the city council undertook to amend section 2 of said Ordinance No. 33 by Ordinance No. 83, so that the latter clause in section 2 should read as follows: "In fixing value, all improvements upon the real estate shall be included, and the cost of any such improvements shall be assessed and included, and all lawful charges and expenses incurred incident to such improvements and of making and collecting the assessment shall be included." Pending the collection of said assessments, the supreme court, in City of Spokane v. Browne, 3 Wash. St. 84, 27 Pac. 1077, decided that Ordinance No. 83, providing for and including both the land and all the improvements thereon in all assessments for the grading of streets, was void, as being in contravention of section 7 of the charter of said city, author-

79 F.—46

izing assessments on real estate only, and that assessments made under such ordinance could not be sustained. On June 26, 1894, the city passed an ordinance (No. A434), known as the "Reassessment Ordinance," to provide for the assessment of all lots and parts of lots or parcels of land fronting or abutting on or adjacent to Monroe street, in the city of Spokane, for the purpose of raising money to pay for the grading and improving of said Monroe street heretofore made. This ordinance, after setting forth the fact that previous ordinances had been declared invalid by the supreme court, provided that "the board of public works of the city of Spokane is hereby authorized and directed to immediately reassess all the lots or parts of lots or parcels of land to the center of the block lying on each side of said Monroe street between the south line of Riverside avenue and the south line of Cliff street, now Ninth avenue, and rate them according to their value, exclusive of all improvements, whether said improvements were attached to or annexed to the land or not, with its just quota of the actual cost and expense of grading and improving said Monroe street, together with any interest that shall have lawfully accrued thereon." On February 26, 1895, the city council passed Ordinance No. A555, approving and confirming the reassessment roll for the assessment district established for the grading of Monroe street, and to provide for the payment of the same. Other ordinances of similar import are set out in the record. It was stipulated by and between the respective parties "that the delay in collecting the original assessment complained of and mentioned in th  )leadings in this cause was due to a mistake, misunderstanding, or ignorance of the law by the city officials prior to the 9th day of March, 1893."

Jones, Belt & Quinn, for appellant.
W. H. Plummer, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). Upon the foregoing facts there are but two questions to be decided: (1) Was the city of Spokane negligent in not earlier creating a fund out of which appellant's warrants are payable? (2) Did the city of Spokane have power, at the time it entered into the contract with Massey, to make a contract, the result of which, if performed, would render the city liable for the grading of the streets?

1. If the city was negligent in failing to provide a fund out of which the warrants issued by it could be paid within a reasonable time, it is liable for any damages which the contractor or bank has suffered by reason of such neglect of duty. In Reilly v. City of Albany, 112 N. Y. 30, 41, 19 N. E. 508, in a case similar in many respects to the case under consideration, the court said:

"It is not disputed but that the contract was lawful in all respects, and conformed to the provisions of the law authorizing such contracts on the part of the city, not only as to the officers by whom it was made and executed on its behalf, but as to all of its material provisions. The rights and liabilities of the parties must, therefore, be determined by the obligations of the contract. An examination of that instrument, so far as the questions involved in this case are concerned, shows that the obligation resting upon the contractor was, concisely stated, to perform the work and furnish the materials required under his contract according to its plans and specifications. Having done this, he became entitled to demand payment for his labor when the funds for that purpose should be assessed, levied, and collected by the regular agencies of the city having authority to raise means to discharge its liabilities. In case of a performance of the contract and the filing of the commissioner's certificate to that effect, the city's obligation was to prosecute, in good faith, the means afforded to it by its charter to obtain and pay over the sums necessary to redeem

its obligation. When the contractor had performed his work according to his contract, he had no duty remaining to discharge, and then had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims. It could not have been supposed that he was not only to earn his compensation, but also to set in motion and keep in operation the several agencies of the city government, over whom he had no control, to place in the hands of the city the funds necessary to enable it to pay its obligations. That was a power lodged in the hands of the city, and the clear intent of the contract was that it should exercise it diligently for the purpose of raising the funds necessary to pay for the improvement. For an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty."

See Leavenworth v. Mills, 6 Kan. 288; Leavenworth v. Stille, 13 Kan. 539; Commercial Nat. Bank v. City of Portland (Or.) 33 Pac. 532, 534; Cummings v. Brooklyn, 11 Paige, 596, 602; City of Memphis v. Brown, 20 Wall. 289, 311.

Was the city negligent? It contends that it was not, and relies upon several decisions of the supreme court of Washington to sustain its contention.

In Soule v. City of Seattle, 6 Wash. 315, 33 Pac. 384, 1080, the court held that, if the plaintiff "could recover at all, it must be upon the contract of his assignor or upon his warrants," and in the course of the opinion said:

"After the decision in the Wilson Case (Wilson v. City of Seattle, 2 Wash. St. 543, 27 Pac. 474), the delay arose entirely from honest doubt as to the law of the case, in which the respondent seems to have shared, inasmuch as he never moved to have a new assessment made. Under these circumstances we do not think the respondent was entitled to the judgment awarded him; but in so concluding we desire to have it understood that the controlling reasons of this decision are the peculiar provisions of the charter of 1886, which left it to the city to regulate special assessments, the terms of the contract with Smart, and the fact that in June, 1890, the city of Seattle was prohibited from making an open contract for such street work by reason of the debt limit of one and one-half per cent., which it had largely exceeded. We leave it an entirely open question whether municipalities may not, under different circumstances, make themselves liable by omissions of the character presented here."

In answering the petition for rehearing, the court said:

"But the main point upon which the case was decided was that the respondent had mistaken his remedy by reason of the fact that his contract with the city was of such a character that it would not justify the charge of negligence against the city until it had been fully moved to levy and collect a local assessment to pay for the work. This ground alone, in our judgment, authorized the dismissal of the case."

In Cloud v. Town of Sumas, 9 Wash. 399, 37 Pac. 305, the court held that an action could not be maintained upon a warrant issued by a municipal corporation evidencing its indebtedness to the holder; that the proper remedy was by mandamus to compel the treasurer of the city to pay the same.

In Stephens v. City of Spokane (Wash.) 39 Pac. 266, which was an action brought on certain street-grade warrants, and came before the supreme court from a judgment sustaining a demurrer to the complaint, the court said:

"The allegation [of the complaint] is that the city of Spokane has wholly failed, neglected, and refused to take any steps for the purpose of creating a fund to be known and designated as the 'Malon Street Fund'; that it has failed,

neglected, and refused, and still fails, neglects, and refuses, to carry out said contract on its part by the payment to this plaintiff, or to any other person for him, of the amount of said warrants. * * * It seems to us that under the former rulings of this court and the well-settled law, if the allegations of the complaint are true that a contract was duly made, and that no steps had been taken for five years on the part of the city to collect the necessary funds for the payment of these warrants, the plaintiff has a legal grievance against the city, and that the complaint in every respect states a cause of action."

In Stephens v. City of Spokane (Wash.) 44 Pac. 541, when the case came before the court upon its merits, the court held that under the charter of the city of Spokane, giving the city power to improve streets, and defray the expense thereof by special tax assessed against the property benefited thereby, the general fund of the city is not liable for the payment of warrants drawn against the special fund created by the assessment unless it appears that the city has failed to take steps to provide such special fund, or has been so negligent in its attempts to create the fund that the right thereto has been lost.

These cases, while modifying the rule as stated in Reilly v. City of Albany, supra, to the extent that the city would be relieved from liability until the proceedings instituted by it had been carried to a conclusion, "and had failed to produce the necessary funds for the payment of the warrants," fall far short of answering the question whether or not the facts of this case do not, in the light of all the authorities, clearly show that the city has been so negligent as to render it liable in this action. We are of opinion that the case of McEwan v. City of Spokane (recently decided by the supreme court of Washington) 47 Pac. 433, virtually decides this question adverse to the views contended for by appellee. That case seems to be directly in point. In passing upon the questions there involved, which are directly applicable to this case, the court said:

"Under the special contract in this case and under the law it was not the duty of the contractors to look after the assessment. That was a duty which not only the law imposed upon the city, but which the special conditions of its contract imposed upon it; and, if the city was mistaken in regard to its construction of the law, the city must be responsible for such mistake, and not the contractors, who were not authorized to construe or enforce the law. Eidemiller v. City of Tacoma (Wash.) 44 Pac. 877. The record shows that the statute of limitations, under the rule laid down by this court in City of Spokane v. Stevens (Wash.) 42 Pac. 123, has run against a portion of these grade taxes, and the city, having failed to collect the said taxes until after the statute has run, would, of course, be powerless to collect them now; hence it must necessarily follow that the city is liable to the plaintiff for its failure to collect them within a reasonable time, as a reasonable time must necessarily be a time prior to the time when the statute of limitations runs."

2. From the facts stipulated in this case it appears that at the time of entering into the contract and at the time of the passage of the ordinances for the grading of the several streets the city was indebted in an amount exceeding the sum of $25,000, excluding its indebtedness for waterworks and assessments for improving the streets, under the provisions of section 7 of chapter 2 of the act of the legislature of the territory of Washington approved January 29, 1886. Does the contract in question, by virtue of which the warrants were issued upon which this suit was brought, come within the prohibition of the charter in limiting the amount of indebtedness which the city was

authorized to incur?   See sections 3 and 19 of the charter (Laws Wash. 1885–86, pp. 301, 307).   Section 19 provides that:

"The city of Spokane Falls has power to borrow money on the credit of the city for any purpose within the authority of the corporation, including the payment of any existing debt, and for such purpose may issue its warrants on the city treasurer, payable at a specified time, with a rate of interest therein named, not exceeding the rate of 8 per cent. per annum, and has further power to levy and collect a tax sufficient to pay the principal and interest on such sum borrowed and for the existing indebtedness and interest thereon: provided, the entire indebtedness of said city must not at any one time exceed the sum of $25,000.00, excluding its indebtedness for water-works and assessments for improving streets under the provisions of section 7 of this chapter."

Does the limitation therein expressed apply to the indebtedness created by the contract in this case?

In Hitchcock v. City of Galveston, 96 U. S. 341, 349, it was argued that the contract entered into by the city for the improvement of its streets and construction of sidewalks would impose upon the city a liability exceeding $50,000, and that it was, therefore, in violation of the provision in the charter of the city which prohibited the council from borrowing for general purposes more than that sum.   The court held that this provision in the charter did not limit the debt of the city, nor prohibit the council from entering into a contract involving an expenditure exceeding that amount for special improvements, such as grading and paving of streets and the construction of sidewalks, which were authorized by the charter.

In Seymour v. City of Spokane, 6 Wash. 362, 33 Pac. 832, the court held that section 19 of the charter, limiting the interest on the city warrants to 8 per cent. per annum, applied only to warrants given for money borrowed on the credit of the city.

In Winston v. City of Spokane, 12 Wash. 524, 527, 41 Pac. 888, where the contract under consideration was in relation to the construction of a system of waterworks, the question presented was whether the obligations provided for in the contract would create an indebtedness of the city within the meaning of the provisions of the constitution (article 8, § 6) in relation thereto.   The court, in passing upon this question, said:

"The general credit of the city is in no manner pledged except for the performance of its duty in the creation of such special fund. The transaction, therefore, is no more the incurring of an indebtedness on the part of the city than is the issue of warrants payable out of a special fund created by an assessment upon property to be benefited by a local improvement. Hence the question is upon principle within the one decided by this court in Baker v. City of Seattle, 2 Wash. St. 576, 27 Pac. 462, in which it was held that warrants issued to a contractor for a street improvement, and payable out of a special fund, to be created by an assessment therefor, were not an indebtedness of the city within the meaning of our constitution. In that case it was not decided whether or not the city would be liable for negligence in failing to take the necessary steps for the creation of the special fund out of which the warrants were to be paid; but from what was decided it is clear that in the opinion of the court the fact of such contingent liability, if it existed, was not sufficient to make the obligations issued against the fund a part of the indebtedness of the city. The case at bar is, in our opinion, within the principle decided in that one, and, as we are satisfied with what was therein held, it is not necessary to further pursue the subject. We would, however, call attention to the case of City of Valparaiso v. Gardner, 97 Ind. 1, which seems to fully

sustain the contention of the appellants. A large number of other cases to the same effect might be cited."

The decision in McEwan v. City of Spokane seems to be as conclusive upon this question as the one just disposed of. The averments in the answer in that case were substantially the same as the agreed facts in this case as to the indebtedness of the city. The court said:

"There is an attempt to plead an indebtedness by the city beyond its charter limit, but we think that no such indebtedness was pleaded under the rule announced in Baker v. City of Seattle, 2 Wash. St. 576, 27 Pac. 462, and Winston v. City of Spokane, 12 Wash. 524, 41 Pac. 888."

Under the decisions of the supreme court of Washington construing the statutes of that state applicable to this case, it follows that the circuit court erred in instructing the jury to find a verdict for defendant. It is proper to add that the opinion in McEwan v. City of Spokane was rendered after the decision of the circuit court in this case. The judgment of the circuit court is reversed, and cause remanded for a new trial in accordance with the views expressed in this opinion.